# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> WILLIAM SHAYNE THORPE, ) <br> ) <br> Defendant. ) | Case No. 1:08-cr-10027 |

## ORDER & OPINION

This matter is before the Court on Defendant William Shayne Thorpe's Motion for Compassionate Release (Doc. 69). The Government has responded (Doc. 70) and this matter is ripe for review. For the reasons stated herein, Defendant's Motion (Doc. 69) is DENIED.

### BACKGROUND

On August 28, 2008, Defendant Thorpe pled guilty to attempted possession of more than five grams of cocaine base with intent to distribute in violation of 21 U.S.C. § 841 and possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c). He was sentenced on December 15, 2008, to 60 months' imprisonment on each charge, which ran consecutively for 120 months' imprisonment total, and concurrent terms of four years' supervised release to follow.

The record indicates Defendant was released on October 13, 2017. On October 31, 2017, a drug test indicated he used cocaine and marijuana. The next day, a United States Probation Officer visited his home and found drug paraphernalia and residue;

Defendant tested positive for cocaine and marijuana again on that day and for marijuana on the next day. On December 8 and December 20, 2017, Defendant also tested positive for cocaine and marijuana; he failed to report for a random drug test on January 5, 2018. Defendant was arrested and was detained from mid-January 2018 to mid-March of that year. On March 14, 2018, the Court revoked Defendant's supervised release and sentenced him to time served and 30 months' supervised release.

Defendant again used marijuana on April 26, 2018, and May 8, 2018, and used marijuana and cocaine on June 12, 2018, and July 5, 2018. These violations resulted in mere modifications to his supervised release. But he then possessed and used cocaine on August 8, 2018, and cocaine and marijuana on August 31, 2018, and failed to report for drug testing repeatedly. He also did not abide by the rules of the work release center at which he was housed and failed to submit monthly reports. Accordingly, on November 14, 2018, his supervised release was revoked once more and the Court sentenced him to a term of 24 months' imprisonment followed by 24 months' supervised release. During that time, he has committed at least one further violation; the record reflects he was placed in a Special Housing Unit and had his good time conduct reduced by 50%.

On December 21, 2018, the President signed into law the First Step Act of 2018. Among other things, the First Step Act modified 18 U.S.C. § 3582(c)(1)(A) to allow incarcerated defendants to seek compassionate release from a court on their own motion, not just through the Bureau of Prisons. On May 9, 2019, the Court received

a letter from Defendant's mother, which it construed as a request for compassionate release. However, the Court could not consider this request because the First Step Act requires such requests be sent to the Bureau of Prisons before a request is made to a court. Defendant now represents he made such request and did not receive a response in the required timeframe, which the Government does not dispute. He therefore filed the instant Motion (Doc. 69). Defendant seeks release because of his grandfather's ill health—the filings indicate his grandfather is unlikely to recover—and the effect it has had on his family.

## DISCUSSION

A court may grant a motion for compassionate release by reducing a prison sentence where "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).[1] The Sentencing Commission has issued a policy at Section 1B1.13 of the 2018 Sentencing Guidelines Manual, which requires the defendant not be a danger to the safety of any other person or to the community. § 1B1.13(2).

Section 1B1.13(2) "currently lists four categories of [extraordinary and compelling] reasons: (1) the defendant's medical condition; (2) the defendant's age; (3) the defendant's family circumstances; and (4) 'other reasons' as determined by the Director of the Bureau of Prisons." *United States v. Handerhan*, No. 19-1904, 2019

---

[1] The Court does not discuss 18 U.S.C. § 3582(c)(1)(A)(ii) because it is not relevant to this case.

3

WL 4898675, at *1 (3d Cir. Oct. 4, 2019). Of these, the first two are clearly not at issue. The family circumstances enumerated in the policy statement also do not apply; the sole two reasons listed under that heading are "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" and "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. n. 1. Defendant does not allege that his child or his spouse will be left without a caregiver (although he does state his nephew might).

As for the "catch-all 'other reasons' category," there is currently division among district courts over whether it allows a district court to utilize its own discretion. *Handerhan*, 2019 WL 4898675, at *1 n. 1; *see also United States v. Fox*, No. 2:14-cr-03, 2019 WL 3046086, at *2 (D. Me. July 11, 2019) (collecting conflicting authority).[2] But the Court need not address that thorny issue. Although the Court is sympathetic to Defendant's family, especially his grandfather, Defendant's separation from them at this difficult time is an ordinary, if unfortunate, consequence of his imprisonment. *See United States v. Burbidge*, No. 1:15-cr-172, 2019 WL 4863481, at *4 (D.N.D. Oct. 2, 2019) (discussing the commonness of the situation as a touchstone of the inquiry and noting difficulties "are not extraordinary or compelling" where they are "a normal consequence of incarceration."). And the Bureau of Prisons has not delineated this as

---

[2] As the Sentencing Commission appears to lack a quorum of members, it does not seem poised to resolve this lack of clarity.

4

such a scenario. Therefore, the Court would not find the standard met regardless of whether it was in the Court's discretion or the Bureau's.

Perhaps more importantly, the Court cannot conclude Defendant would not be a danger to the community. When released in 2017 and 2018, Defendant repeatedly disregarded the conditions of his supervised release and lied to his probation officer about it. Since his reincarceration, he has violated facility rules, resulting in his placement in the Special Housing Unit and the loss of 50% of his good-time conduct for a high severity violation. This flagrant disregard for the law makes it impossible to reduce Defendant's sentence and release him without creating a potential harm to the community.

The Court has a deep sympathy for the pain Defendant's family is suffering at this difficult time. But that does not change the findings the Court would need to make to order Defendant's release, and Defendant's request and prior history do not allow those findings.

## Conclusion

Defendant's Motion (Doc. 69) is DENIED.


SO ORDERED.

Entered this 18th day of November 2019.

s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge
